**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cr-20133-RAR

UNITED STATES OF AMERICA,

v.

TANIA ROSA RODRIGUEZ,

     Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Defendant Tania Rosa Rodriguez's ("Defendant")

Motion to Dismiss the Indictment for Preindictment Delay ("Motion"), (ECF No. 16). The

Government filed a Response in opposition, (ECF No. 22), to which Defendant filed a Reply, (ECF

No. 24). Defendant's Motion was referred to the undersigned by the Honorable Rodolfo A. Ruiz II,

United States District Judge for the Southern District of Florida. (ECF No. 23). The undersigned

conducted a hearing on the Motion on July 7, 2026 and admitted into evidence Defendant's Exhibits

A and B and the Government's Exhibits 1–3. (ECF Nos. 31, 32). No witnesses were called. Having

considered the Motion, the record as a whole, the arguments presented at the hearing, and being

otherwise fully advised, the undersigned respectfully **RECOMMENDS** that the Motion be **DENIED**.

I.     **BACKGROUND**

    A.    **Facts**

The facts summarized herein are derived from the Parties' briefs, the dockets in the instant

case and in the underlying criminal proceeding,[1] and the exhibits admitted at the hearing; they are not

---

[1] The term "underlying criminal proceeding" refers to *United States v. Tania Rodriguez*, No. 19-cr-20616 (S.D. Fla. Sept. 24, 2019).

in dispute. On or about August 9, 2017, Defendant signed a Form N-400 application for naturalization. Form N-400 included the following question: "Have you ever committed, assisted in committing, or attempted to commit, a crime or offense for which you were not arrested?" Defendant answered "no." On March 14, 2018, Defendant appeared at a naturalization interview where she was interviewed under oath. The United States Citizenship and Immigration Services approved Defendant's Form N-400 application and she became a naturalized United States citizen on March 24, 2018.

On September 24, 2019, Defendant was charged by Information in the underlying proceeding. (No. 19-cr-20616, ECF No. 1). The Information charged Defendant with one count of conspiracy to commit health care fraud in violation of Title 18, United States Code, Section 1349. (*Id.*). It alleged that the conspiracy began in or around March 2008 and continued through in or around April 2015. (*Id.* at 3). In the underlying proceeding, Defendant was represented by Attorney Alberto F. Sarasua ("Attorney Sarasua").

On October 16, 2019, the Court held a change of plea hearing where Defendant pled guilty to the Information. (No. 19-cr-20616, ECF No. 19). Defendant's guilty plea was made pursuant to a factual proffer[2] and a plea agreement.[3]

In preparation for Defendant's sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSI" or "PSR"), (Sealed ECF No. 19-1 at 19–26), which was filed on January 15, 2020 in the underlying criminal proceeding. The PSI report included the following statement:

> Records maintained by the Law Enforcement Support Center of the United States Immigration and Customs Enforcement (ICE) confirmed the defendant entered the United States on May 2, 2007. Furthermore, records confirmed the defendant became a naturalized United States [citizen] on March 24, 2018, in Hialeah, Florida (certificate

---

[2]  Govt's Ex. 1, (ECF No. 32-1).

[3]  Govt's Ex. 2, (ECF No. 32-3).

number 39763374). As she, however, was involved in the instant offense (since April 2015 according to the Indictment) when naturalized, the Department of Homeland Security, Citizenship and Immigration Services should be advised. The Department of Homeland Security may wish to review the alien file for possible referral and consideration of [sic] the de-naturalization division.

*Id.* at ¶ 64.

On August 17, 2020, Defendant was sentenced to a term of 28 months' imprisonment, followed by three years of supervised release, and was ordered to pay $5,343,497.86 in restitution and a $100.00 special assessment. (No. 19-cr-20616, ECF No. 39).

On July 21, 2021, while Defendant was serving her sentence, the Bureau of Prisons ("BOP") sent a Detainer Action Letter to United States Customs and Border Protection ("CBP") (ECF No. 19-1 at 28). It checked a box indicating that BOP was in receipt of "pending charges listed in [the] PSI" and stated:

> Will you please Investigate this report and advise what disposition, if any, has been made of the case. If subject is wanted by your department and you wish a detainer placed, it will be necessary for you to forward a certified copy of your warrant to us along with a cover letter stating your desire to have if lodged as a detainer. If you have no further interest in subject, please forward a letter indicating so.

(*Id.*). (some capitalization omitted). It indicated that Defendant's release from custody was tentatively scheduled for January 27, 2023. (*Id.*) The box for "Other" was also checked, with the following annotation underneath it: "inmates['] PSR indicated on 05/02/2007 charge of entry without inspection, agency was [CBP]. The disposition states, Docket No: Unknown." (*Id.*). (some capitalization omitted).

Defendant completed her prison sentence on October 28, 2022. (ECF No. 16 at 4). While on supervised release, Defendant was employed and paid 10% of her salary towards restitution. (*Id.*).

Defendant proffered in her Motion (and the Government did not dispute) that on November 19, 2025, Immigration and Customs Enforcement's Office of the Principal Legal Advisor ("OPLA")

drafted a letter to the Department of Justice's Office of Immigration Litigation, apparently for the purposes of pursuing civil denaturalization proceedings against Defendant. (*Id.*). The Government opened a criminal investigation on February 11, 2026. *See* Def.'s Ex. B, (ECF No. 31-2).

### B.      Procedural History

On March 31, 2026, a federal grand jury sitting in the Southern District of Florida returned an Indictment in the instant case. (ECF No. 3). The Indictment charged Defendant with procuring citizenship or naturalization unlawfully in violation of Title 18, United States Code, Section 1425(a). It alleged that the charged conduct occurred from on or about August 9, 2017 through on or about March 24, 2018. (*Id.* at 1).

The Indictment was unsealed on April 9, 2026, (ECF No. 7), and Defendant was arraigned that day, (ECF No. 8). Defendant now moves to dismiss the Indictment for pre-indictment delay. (ECF No. 16).

## II.      DISCUSSION

"The limit on pre-indictment delay is usually set by the statute of limitations." *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996).[4] However, the Due Process Clause of the Fifth Amendment may bar an indictment even when, as here, the indictment is brought within the applicable limitations period. *Id.* In order to establish a Due Process Clause violation based on pre-indictment delay: (1) the delay must cause actual prejudice to the defense and (2) the Government must have deliberately delayed indictment in order to gain a tactical advantage over the defendant. *Id*. The defendant has the burden of establishing both prongs. *United States v. Butler*, 792 F.2d 1528,

---

[4]  Here, the charge against Defendant has a 10-year statute of limitations, *see* 18 U.S.C. § 3291; the Indictment was returned within the limitations period.

1533 (11th Cir. 1986). The Eleventh Circuit has described this burden as "an exceedingly high one."

*Id.*

### A.      Defendant Failed to Show that the Pre-Indictment Delay Caused Her Actual Prejudice

Defendant has the burden of showing that the pre-indictment delay caused her actual prejudice. *Foxman,* 87 F.3d at 1222. "For the defendant to carry the heavy burden of proving actual prejudice from pre-indictment delay, concrete proof is required; mere speculation and bare allegations will not suffice." *United States v. McCoy*, 977 F.2d 706, 711 (1st Cir. 1992). "When a defendant asserts prejudice because of the loss of evidence, [she] must show that the loss impaired [her] ability to prove a meaningful defense." *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985) (quoting *United States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982)).

Defendant asserts, generally, that her memory and the memory of other witnesses who could corroborate what Defendant did or did not know about her criminal conduct at the time of her citizenship application have diminished due to the passage of time. (ECF No. 16 at 9). She also introduced, at the hearing, the affidavit of Attorney Sarasua, who had represented her in the underlying proceeding. *See* Def's Ex. A, (ECF No. 31-1). Attorney Sarasua's affidavit states in its entirety:

> I, Alberto F. Sarasua, represented Tania Rodriguez on her case before Judge King, 19-CR-20616. I represented her from 2019 through her sentencing in December 2020. As part of my representation, I prepared a case file, in which I kept notes and other documents related to her case. I no longer have access to that file. Nor do I recollect many details about that case, due to the passage of time.

(*Id.*).[5]

---

[5] The Court accepted the exhibit over the Government's objection to the admission of the hearsay statement without opportunity to cross examine the declarant. While the objection is well-placed, for completion of the record I have considered the affidavit.

The law in this Circuit is clear that generalized assertions of faded memories due to the passage of time are insufficient to meet the prejudice prong. *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984) ("Faded memories occasioned by preindictment delay do not alone satisfy the actual prejudice requirement."); *United States v. Barragan*, 752 F. App'x 799, 801 (11th Cir. 2018) ("Barragan points to precisely the faulty memories—*e.g.*, 'his memory was useless'—and lost witnesses—*e.g.*, '[t]he other four lenders . . . were all out of business'—that we have found 'insufficient to demonstrate the actual prejudice required.'" (alteration in original) (quoting *United States v. Radue*, 707 F.2d 493, 495 (11th Cir. 1983)); *United States v. Warren*, 772 F.2d 827, 836 (11th Cir. 1985) ("The general unavailability of witnesses or loss of memory occasioned by the passage of time does not constitute proof of substantial prejudice."). Thus, Defendant's general faded memory assertions are not enough.

Attorney Sarasua's affidavit fares no better. It establishes that he had a case file for the underlying proceeding and that he is no longer in possession of that case file. But the substance of the information that was in the case file and whether it would be helpful to Defendant are unknown. "When a defendant asserts prejudice because of the loss of evidence, he must show that the loss impaired his ability to provide a meaningful defense." *Solomon*, 686 F.2d at 872. In *Solomon*, the defendant failed to make a sufficient showing of prejudice when he alleged that the records destroyed in a fire "would have shown how little merchandise he bought from [the government's witness], how much he paid, and how the price compared with what he paid legitimate vendors" and "would have shown when and how he first met [that witness]." Here, Defendant has proffered less information about the no-longer-available evidence than the defendant in *Solomon*. Defendant's argument, that loss of the file prejudices her ability to even know what was lost to her defense, has been unsuccessfully raised before. *See United States v. Pendergrass*, No. 22-13018, 2025 WL 78172, at *5

6

(11th Cir. Jan. 13, 2025) (defendant failed to meet the prejudice prong where he offered "nothing more than cursory allegations that the loss of records made it difficult to fully investigate his defense").

Defendant's failure to meet the first prong is dispositive of her Motion. *See United States v. Russaw*, No. 23-11598, 2023 WL 5423510, at *3 (11th Cir. Aug. 23, 2023) ("Because Russaw's only allegations of prejudice are too speculative to establish actual prejudice from the pre-indictment delay he fails the first prong of his due process claim. Because he must satisfy both prongs, we need not address the second prong regarding whether the government intentionally sought a tactical advantage."); *Pendergrass*, 2025 WL 78172, at *5 ("We [ ] conclude that Pendergrass failed to demonstrate prejudice and, because he has not done so, we decline to address his arguments that the delay resulted from a deliberate design by the government to gain a tactical advantage."). Nonetheless, the undersigned will address the second prong.

**B.      Defendant Failed to Show that the Pre-Indictment Delay was the Result of Deliberate Action by the Government to Gain a Tactical Advantage**

Defendant argues that the Government appears to have deliberately delayed this case to seek tactical advantages, such as limiting her ability to gather exculpatory evidence. (ECF No. 16 at 8). She notes that the Government would have known that the passage of time (in this case, eight years) would have resulted in deteriorated witness memory, making Defendant's case more difficult to defend. (*Id.* at 10). She also argues that Defendant deliberately waited to indict the case until she had made three years of restitution payments. (*Id.*). Lastly, she argues that by waiting to obtain an

indictment, the Government gained a strategic tactical advantage through Defendant's cooperation. (ECF No. 16 at 10–11).[6]

But, even if Defendant's alleged diminished ability to gather exculpatory evidence, the Government's receiving three years of restitution payments, and the Government's obtaining Defendant's cooperation bestowed some benefit or conferred some advantage to the Government, the test requires a showing that the Government acted (or did not act) with the purpose of securing the tactical advantage. In other words, "[s]imply gaining a tactical advantage is not enough[,]" "the tactical advantage must be the result of deliberate action by the government toward that end." *United States v. Jones*, 592 F. App'x 920, 922 (11th Cir. 2015); *see also United States v. Rivera*, No. CR209-14, 2009 WL 2390847, at *2 (S.D. Ga. July 9, 2009), *report and recommendation adopted*, 2009 WL 2422211 (S.D. Ga. Aug. 4, 2009) ("[An] assertion that the delay has given the Government a tactical advantage, even if true, does not satisfy [the Defendant's] duty to show that the Government deliberately delayed the indictment to gain a tactical advantage."); *United States v. Sanders*, No. 15-CR-00010, 2015 WL 6684746, at *9 (N.D. Ga. Oct. 29, 2015) ("Sanders has not shown that the government deliberately sought a tactical advantage by delaying the indictment, but instead, has simply shown, at most, that the delay combined with [some speculative] prejudice to [her] . . . gave the government a tactical advantage; however, simply gaming a tactical advantage is not enough." (alterations in original; internal quotation marks omitted)).

Defendant also argues that the case could have been brought earlier. She states that the Government was affirmatively aware of Defendant's potential immigration issues because the PSI was filed on January 15, 2020 and the Detainer Letter was prepared in 2021. (ECF No. 16 at 8).

---

[6] According to Defendant, "[t]his cooperation, and the criminal cases that resulted against other defendants, allowed [the Government] to gain leverage over additional witnesses who could then potentially cooperate against Ms. Rodriguez on her future criminal denaturalization case—as they may be aware of what she did, or did not, know." (ECF No. 16 at 11).

However, it is not enough for a defendant to show that the Government could have acted sooner; she must show the reason for the delay was to obtain a tactical advantage. "The government's inaction in bringing the case is insufficient, standing alone, to establish that the government's actions were motivated by an attempt to gain a tactical advantage." *United States v. Butler*, 792 F.2d 1528, 1534 (11th Cir. 1986).

Defendant further notes that the delay was not for investigative reasons because only six weeks transpired between the opening of the investigation and the return of the Indictment.[7] (ECF No. 16 at 7) ("The fact that only six weeks passed from when the investigation was opened until when the indictment was returned shows that the charging delay here was clearly not for investigative reasons."). But, even if no additional investigation was needed, the Court is not permitted to infer that the reason for the delay must have been to gain a tactical advantage. *See United States v. Rosso*, No. 14-CR-00014, 2015 WL 7115860, at *19 (N.D. Ga. Nov. 12, 2015) (rejecting argument that because the delay was not for investigative reasons, it could be presumed that the reason for the delay was tactical).

The Government has not proffered an explanation for the delay in this case. But "the Government does not have the burden of coming forward with a reason for the delay." *United States v. Pompano Helicopters, Inc.*, No. 08-60279-CR, 2009 WL 1456745, at *4 (S.D. Fla. May 22, 2009); *see also United States v. Russaw*, No. 22-CR-356, 2023 WL 2564394, at *5 (M.D. Ala. Mar. 7, 2023), *report and recommendation adopted*, 2023 WL 2563993 (M.D. Ala. Mar. 17, 2023), *aff'd*, No. 23-11598, 2023 WL 5423510 (11th Cir. Aug. 23, 2023) ("While the Government has not presented evidence explaining the delay, it is not the Government's burden to come forward with a reason.").

---

[7] Here, the Government opened its investigation into Defendant's criminal denaturalization on February 11, 2026, after a referral from OPLA. *See* Def.'s Ex. B, (ECF No. 31-2). It obtained the Indictment approximately six weeks later, on March 31, 2026.

9

"[W]here the record shows no reason for the delay (or where delay is due to simple negligence), no due process violation exists." *Foxman*, 87 F.3d at 1223, n.2.

Defendant urges the Court to follow *United States v. Sabath*, 990 F. Supp. 1007, 1017 (N.D. Ill. 1998). *See* (ECF No. 24 at 2). In *Sabath*, the court determined that "a showing of substantial, actual, and compound prejudice . . . when coupled with the government's recklessness and lack of legitimate investigatory justification for the delay, violates the Constitution." 990 F. Supp. 1007, 1017 (N.D. Ill. 1998). At the outset, and for the reasons discussed above, Defendant has not made a showing of actual prejudice.

Moreover, *Sabath* is inconsistent with Eleventh Circuit precedent, which requires a showing that "the delay was the product of a deliberate act by the government designed to gain a tactical advantage." *Foxman*, 87 F.3d at 1222. The *Sabath* Court even acknowledges that it is at odds with Eleventh Circuit precedent, noting that "[s]everal other circuits demand a showing that the government acted in bad faith or intentionally delayed the indictment to gain tactical advantage" and listing the First, Second, Third, Sixth, Tenth, Eleventh, and D.C. Circuits as applying this standard. 990 F. Supp. at 1017 (noting "these circuits dispense with balancing prejudice and governmental fault"); *see also United States v. Stoll*, No. 10-60194-CR, 2011 WL 939251, at *9 (S.D. Fla. Feb. 16, 2011), *report and recommendation adopted*, 2011 WL 765949 (S.D. Fla. Feb. 25, 2011) (noting that the Eleventh Circuit has not adopted the "reckless disregard" test).

Defendant suggests that the Eleventh Circuit's two-prong test is at odds with the Supreme Court's decision in *United States v. Lovasco*, 431 U.S. 783 (1977). (ECF No. 16 at 5 n.4) ("*Lovasco* [] set forth a flexible balancing test to determine whether due process was violated by preindictment delay, which balances the prejudice caused by the delay against the conduct of the government."); *id.* ("Given that the Eleventh Circuit has narrowed the Supreme Court's grounds upon which a due

process violation can [be] found due to preindictment delay, and because *Lovasco* instead imposed a flexible balancing test, Ms. Rodriguez believes the Eleventh Circuit to be on the wrong side of this Circuit split."). But *Lovasco* itself did not impose a balancing test. Instead, it "[left] to the lower courts, in the first instance, the task of applying the settled principles of due process that [it] [ ] discussed to the particular circumstances of individual cases." 431 U.S. at 797; *see also Naposki v. Adams*, No. CV-1600391, 2017 WL 907606, at *6 (C.D. Cal. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 912144 (C.D. Cal. Mar. 7, 2017), *judgment entered*, 2017 WL 895564 (C.D. Cal. Mar. 7, 2017) (noting that "the Supreme Court in *Lovasco* declined to set out a balancing test for determining when pre-indictment delay violates due process"). The Eleventh Circuit has established a two-prong test which places the burden on the defendant to show both actual prejudice and intentional delay by the Government in order to gain a tactical advantage. *United States v. Caporale*, 806 F.2d 1487, 1514 (11th Cir. 1986) (citing *Lovasco*, 431 U.S. at 790; *United States v. Lindstrom*, 698 F.2d 1154, 1157–58 (11th Cir. 1983)). This Court is bound by Eleventh Circuit precedent.[8]

Here, Defendant has not shown that the Government deliberately delayed her prosecution to gain a tactical advantage. Accordingly, Defendant has failed to carry her burden as to the second prong, and the Motion should be denied.

---

[8] Other defendants in this Circuit have unsuccessfully argued for a balancing test. *See*, *e.g.*, *United States v. Williams*, No. 13-CR-21, 2016 WL 2937466, at *8 n.6 (N.D. Ga. Apr. 1, 2016), *report and recommendation adopted*, 2016 WL 2903239 (N.D. Ga. May 18, 2016) ("Defendant acknowledges that this two-pronged test is 'well settled precedent in the Eleventh Circuit,' but contends that it is 'inconsistent with the balancing test set out by the Supreme Court in *Lovasco*." Defendant asserts that '[p]reindictment due process should be determined by a balancing test on a case-by-case basis—not a rigid standard of fault,' and under this balancing test 'the government's reasons for the delay should be weighed against the prejudicial effects of the delay on the defendant.' This Court "is bound by controlling Eleventh Circuit precedent," *Springer v. Wal-Mart Assocs. Grp. Health Plan*, 908 F.2d 897, 900 n.1 (11th Cir. 1990), and therefore the undersigned has applied the two-pronged test discussed above.").

### III.     RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (ECF No. 16) be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz II, United States District Court Judge for the Southern District of Florida, within **SEVEN (7 DAYS)**[9] of being served with a copy of this Report and Recommendation. Responses thereto shall be filed, if at all, within **FOUR (4) DAYS** of the objections. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida this 15th day of July, 2026.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

---

[9] At the hearing, the Parties agreed to this shortened briefing schedule.